UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| GREGORY SWINTON, | : |  |
|---|---|---|
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 3:16-cv-659 (SRU) |
|  | : |  |
| CARSON WRIGHT, M.D., | : |  |
| Defendant. | : |  |

## RULING ON MOTION FOR SUMMARY JUDGMENT

On April 28, 2016, Gregory Swinton, an inmate currently incarcerated at McDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983. Swinton alleged that Dr. Carson Wright deprived him of a proper, allergy-free diet for fifty-seven days, in violation of his Eighth Amendment protection against cruel and unusual punishment. Such deprivation allegedly rendered Swinton unable to eat 146 of the meals served by the staff at Northern Correctional Institution ("Northern") in Somers, Connecticut, where he was housed at the time, and "caused his health to diminish." Pl.'s Opp'n to Mot. Summ. J. at 3 (doc. # 32). On June 28, 2016, I issued an Initial Review Order permitting Swinton's Eighth Amendment claim to proceed against Wright, reasoning that Swinton had stated a plausible claim of deliberate indifference to serious medical needs. Initial Review Order (doc. # 13). On August 26, 2016, Wright filed an answer to Swinton's complaint. *See* Def.'s Answer (doc. # 16).

On January 23, 2017, Wright filed the instant motion for summary judgment with supporting exhibits, including Swinton's medical file, Wright's sworn affidavit, and the Inmate Request Forms and Grievances that Swinton filed while at Northern. Def.'s Mot. Summ. J. (doc. # 29); Def.'s Ex. 1 (doc. # 30). Swinton filed a written memorandum in opposition to Wright's motion on February 28, 2017, along with his own affidavit, an affidavit from his cellmate,

1

Latuan Gainey, excerpts from his medical records, and nutritional information on the foods he was allegedly served during the fifty-seven day period when he was not on his special diet.[1] Pl.'s Opp'n (doc. # 32). For the following reasons, I grant Wright's motion.

I.    Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of some alleged factual dispute will not defeat summary judgment motion).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968) (nonmoving party must submit sufficient evidence supporting claimed factual dispute to require jury or judge to resolve parties' differing versions of truth at trial).

---

[1] Swinton did not submit a statement in opposition to Wright's motion for summary judgment pursuant to Local Rule 56(a)(2). Although the nonmoving party is required to submit a Local Rule 56(a)(2) statement, I can discern from his written memorandum and supporting exhibits that there exists no genuine issue of material fact with respect to his claim. Therefore, Swinton's failure to submit a statement in opposition is not dispositive of the motion.

In reviewing the record, I must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party for the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, I must read the *pro se* party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

II.  Factual Allegations

Swinton is allergic to eggs and soy food products. In 2015 and early 2016, while incarcerated at Bridgeport Correctional Center ("BCC"), Swinton was on an egg- and soy-free diet. On February 17, 2016, however, Swinton requested that he be taken off the special diet because he suspected that the correction officers at BCC were "playin[g] with [his] food." Inmate Request Form, Unspecified Pl.'s Ex. (doc. # 32-1 at 12). Wright, a principal physician at UCONN Correctional Managed Health Care ("UCMHC"), honored his request and ordered that he be taken off his special diet. Initial Review Order at 2 (doc. # 13). That same day, Swinton was transferred from BCC to Northern. Def.'s Aff. at ¶ 12 (doc. # 29-3).

On February 26, 2016, while housed at Northern, Swinton requested via written Inmate Request Form that he be placed back on his allergy-free diet and that he be examined for a possible back injury. Def.'s Aff. at ¶ 13 (doc. # 29-3). Due to the frequency of inmate requests for special diets, it is standard procedure for correctional medical staff that all such requests be approved by Dr. Wu at UCMHC. *Id.* at ¶ 7. Prior to issuing an approval, it is also standard procedure for correctional medical staff to verify the inmate's food allergy through the use of a radioallergosorbent test or "RAST test." *Id.* at ¶ 8. A nurse who reviewed Swinton's request placed Swinton on the list to be seen by a prison doctor. *Id.* at ¶ 14. Nearly one month later, on March 22, 2016, Wright evaluated Swinton. *Id.* at ¶ 15. He reviewed Swinton's medical records and ordered that an x-ray be conducted on Swinton's back and that Northern medical staff forward his diet request to Dr. Wu. *Id.* at ¶ 16.

Dr. Wu ordered the RAST test on April 6, 2016, which later revealed that Swinton was, indeed, allergic to egg whites, wheat, corn, soy, and peanuts. Def.'s Aff. at ¶ 18 (doc. # 29-3). Wright was notified of the RAST test results via e-mail on April 12 and, two days later, ordered that Swinton be placed on a therapeutic diet that includes no eggs, nuts, or soy. *Id.* at ¶ 20.

From his transfer to Northern on February 17, 2016, to Wright's order on April 14, 2016, a total of fifty-seven days, Swinton did not consume any of the meals provided by Northern staff containing soy or eggs. Pl.'s Aff. (doc. # 32); Gainey Aff. (doc. # 32). Following his initial visit with Wright, Swinton asked the correctional staff at Northern to log all the meals being served that contained soy or eggs. They logged 146 meals, none of which Swinton was able to consume. Am. Comp. at ¶ 1 (doc. # 10).

III.   Analysis

In support of his motion for summary judgment, Wright argues that the uncontroverted

4

evidence establishes that it was Swinton, not Wright, who requested that his allergy-free diet be discontinued in February 2016, that Wright adequately responded to Swinton's request to be placed back on the diet, and that Swinton suffered no adverse medical effects during the period he was off the diet. Wright submits as evidence his own affidavit, Swinton's Inmate Request Forms showing that Swinton requested that he be removed from the diet, and Swinton's sealed medical records. Def.'s Ex. 2-4. Swinton does not dispute that he requested to be taken off the diet in February 2016 but argues that Wright should have placed him back on the diet immediately upon his request and that the removal from the diet "caused his health to diminish and . . . notable weight loss . . . ." Pl.'s Opp'n at 3 (doc. # 32). As evidence, Swinton submits excerpts from his medical records, which Wright reviewed during his evaluation of Swinton on March 22, 2016, that clearly show an allergy to eggs and soy.[2] *Id.* at 18–20. He also submits nutrition information for various foods that he claims were served by Northern staff during the time he was off his diet and affidavits from himself and his cellmate attesting to Swinton's refusal to eat the foods being served during that time. *Id.* at 9–12.

To succeed on his claim for deliberate indifference to a serious medical need, Swinton must show both that his medical need was serious and that Wright acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks

---

[2] Swinton did not move to seal the excerpts from his medical records that he attached to his memorandum, but the clerk is directed to seal those medical records.

5

omitted). Subjectively, Wright must have been actually aware of a substantial risk that Swinton would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983; *see id.* at 280; nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Food allergies may constitute a serious medical need if they prevented Swinton from receiving a safe or nutritionally adequate diet. *See Sweeting v. Miller*, 2015 WL 4773276, at *3 (W.D. Va. Aug. 12, 2015) (collecting cases). Thus, to survive a motion for summary judgment, Swinton must also show that the diet he was provided was not safe or nutritionally adequate to sustain his health. *See Witschi v. North Carolina Dep't of Public Safety*, 2014 WL 3735135, at *2 (W.D.N.C. July 29, 2014) (collecting cases). "To show inadequate nourishment, courts typically require evidence of a connection between the[] challenged diet regimen and substantial weight loss." *Sweeting*, 2015 WL 4773276, at *3.

With respect to the objective component of his Eighth Amendment claim, Swinton has offered evidence that he was unable to eat 146 meals during the fifty-seven days when he was off his allergy-free diet. He also claims in his memorandum that the removal of the diet "caused his health to diminish" and that he lost forty pounds, although he has not submitted any evidence to support that claim. My review of Swinton's medical records shows that he experienced some weight loss during the time Swinton was off his allergy-free diet. *See* Def.'s Ex. 1 (doc. # 30). It is not clear, however, whether the medical records show stated weight, estimated weight, or

measured weight.³ Still, a reasonable jury could infer that Swinton lost weight as a direct result of inadequate nourishment caused by the removal of the allergy-free diet.

Although Swinton might be able to establish that the removal of the special diet caused him inadequate nourishment, he has not shown that Wright acted with deliberate indifference to his medical needs. "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment . . . ignored a life-threatening and fast-degenerating condition for three days . . . or delayed major surgery for over two years . . . ." *Demata v. New York State Corr. Dept. of Health Services*, 1999 WL 753142, *2 (2d Cir. Sept. 17, 1999) (citations omitted; internal quotation marks omitted); *see also Cerilli v. Rell*, 2010 WL 3827960, *6 (D. Conn. Sep. 23, 2010) (to prevail on deliberate indifference claim, prisoner must prove that defendants intended either to deny or unreasonably delay access to needed medical care, or wantonly inflicted unnecessary pain). No such circumstances are present in this case.

Wright has presented uncontroverted evidence that he responded to Swinton's request to be placed back on his allergy-free diet adequately and in accordance with UCMHC protocol. After Swinton informed him of his need for an eggs- and soy-free diet, Wright referred Swinton's request to Dr. Wu for RAST testing, which is standard procedure for verifying inmate food allergies for special diet requests. Swinton does not dispute that, when Wright received notification that the results of the RAST test positively showed an allergy to eggs and soy food products, Wright promptly ordered that Swinton be placed on an adequate allergy-free diet.

---

³ The medical records show Swinton's weight as: 240 lbs. on 10/2/15 (p. 92); 208 lbs. on 1/26/16 (p. 33); 226 lbs. on 2/16/16 (p. 61); 230 lbs. on 2/17/16 (p. 32); 226 lbs. on 4/16/16 (p. 18); 221 lbs. on 4/21/16 (p. 56); and 218 lbs. on 5/13/16 (p. 28). His height is also listed in various records as 6'0", 6'2", and 6'3" (pp. 61, 81, 114).

7

Swinton has not presented any evidence that Wright deliberately delayed or ignored his request for an allergy-free diet. *See Demata*, 1999 WL 753142, at *2; *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) (prisoner failed to show that defendants refused to treat prisoner's condition, failed to provide prescribed medication, or placed unreasonable conditions on receipt of treatment). Swinton's only contention is that Wright should have ordered the diet immediately upon request based on his medical records as opposed to referring him to Dr. Wu for RAST testing.

Swinton disagrees with Wright's decision to refer him for RAST testing, which he does not dispute is standard protocol. Even if it reasonably could be inferred from Swinton's evidence that Wright could have, and should have, ordered the special diet immediately upon reviewing Swinton's medical records without ordering a RAST test, such an inference, at most, establishes malpractice, not deliberate indifference. *See Harrison v. Barkley*, 219 F. 3d 132, 139 (2d Cir. 2000) (medical malpractice, which may include delay in treatment based on bad diagnosis or erroneous calculation of risks and costs or mistaken decision not to treat based on view that condition is benign or trivial, does not amount to Eighth Amendment violation). Based on the foregoing, no reasonable fact-finder could conclude that Wright acted with deliberate indifference to Swinton's medical needs.

IV.   Conclusion

Wright's motion for summary judgment (doc. # 29) is **GRANTED**. The Clerk is directed to enter judgment in favor of Wright and close this case.

**SO ORDERED** this 5th day of September 2017 at Bridgeport, Connecticut.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge